1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOANNA FERGUSON, et al.,

       Plaintiffs,

v.

CLARK COUNTY SCHOOL
DISTRICT, et al.,

       Defendants.

2:08-CV-31 JCM (GWF)

**ORDER**

    Presently before the court is defendant Clark County School District's ("CCSD") motion for summary judgment.  (Doc. #73).  Plaintiffs have filed an opposition (doc. #76), to which defendant has replied (doc. #81).

    The instant litigation centers around CCSD's response to alleged violations of plaintiffs' civil rights by their teacher, Mamie Hubbard-Washington.  CCSD has moved for summary judgment on plaintiffs' claims brought under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act, as well as plaintiffs' claim that CCSD negligently hired, trained, and supervised, Ms. Washington.

**I.    Facts**

    The admittedly disturbing facts underlying the instant dispute are well known to the litigants.  Accordingly, a short summary of the facts will suffice for present purposes.

**James C. Mahan**
**U.S. District Judge**

1    Plaintiffs are five autistic and non-verbal children (and their guardians) who attended Doris

2    Reed Elementary School between the 2006 and 2008 school years.  The autistic class at Doris Reed

3    was taught by Ms. Washington during the relevant time period.

4    Ms. Washington received a degree in elementary education from Governor State University

5    in 1975.  After teaching for two years, she returned to school in 1977 to major in

6    behavioral disorders and learning disabilities. Ms. Washington also received a teaching certification

7    in special education from the state of Illinois.  Prior to moving to Nevada, Ms. Washington taught

8    behavior to a special education class for three years, before switching to a learning disabilities class

9    for four years, and taught in an autistic classroom for ten years.

10    Ms. Washington interviewed for a teaching position at Doris Reed in December 2005. CCSD

11    conducted its standard background check and, upon Ms. Washington being cleared, extended her an

12    offer of employment.  After arriving at Doris Reed, Ms. Washington was assigned to teach the

13    autistic class.  Prior to beginning her assignment, Ms. Washington was required to participate in

14    CCSD's autistic education training program.  Ms. Washington assumed control of the class in

15    January 2006.

16    Plaintiffs allege that Ms. Washington began abusing the children immediately after assuming

17    her position at Doris Reed Elementary.  Plaintiffs have provided testimony establishing that Ms.

18    Washington pinched and bruised the children, purposefully scratched them with her nails, and struck

19    the children with her fist, knuckles, and a ruler. (Doc. 73, Exs. D and E and Doc. #76, Exs. 1, 2, 3,

20    and 4).  Ms. Washington allegedly yelled at the children on a regular basis calling them "crybabies,"

21    "dumb," and "sissies."  *Id*.  Plaintiffs' exhibits establish that the children were so afraid of Ms.

22    Washington that they would cower and cover their heads when she entered the room or approached

23    their desks.  (Doc. 76, Exs. "3", "4", and "5").

24    Plaintiffs also provide evidence that Ms. Washington smashed the face of one of the students

25    onto a desktop causing one of his teeth to chip and gave that same student a black eye. (Doc. 76, Ex.

26    7).  According to depositions of classroom aides, Ms. Washington punched another child in the

27    forehead and slapped another child on the head.  (Doc. 76, Ex. 1 and 2).  On multiple occasions

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

throughout 2006 and into early 2007, classroom aides and parents of the minor children reported the incidents of abuse to school administrators.  (Doc. #73, Exs. D, E, H) and (Doc. 76, Exs. 1, 2, 3, and 7).  Despite the reports of abuse beginning in 2006, Ms. Washington was allowed to stay in the classroom and abuse the students until her removal in May, 2007.

CCSD contends that it was first made aware of abuse allegations on March 20, 2007, when Dawn Byerly, a special education aide, witnessed Ms. Washington treat a child in an aggressive manner by grabbing him by the neck and forcing him to a garbage can to spit out food.  Ms. Byerly reported the incident to her supervisor and completed a written statement.  In response, the school conducted an investigation by questioning the other aides in the classroom.  These aides did not confirm any wrongdoing on the part of Ms. Washington.

Shortly thereafter, on April 10, 2007, a second special education aide, Linda Anderson, witnessed Ms. Washington grab a child by the neck and forcibly move him.  The school again investigated the incident, questioning Ms. Anderson and two other adults that were in the classroom and would have witnessed the incident.  The next day, CCSD provided Ms. Washington with a notice of investigatory conference to address the allegations and provide Ms. Washington with an opportunity to respond.  The conference was held on April 16, 2007, resulting in Ms. Washington's suspension without pay and forwarding the complaint to the police department.  Ms. Washington was ultimately terminated from employment with CCSD and convicted of criminal child abuse and neglect.

**II.    Discussion**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir. 1996); FED. R. CIV. P. 56(c).  The moving party bears the burden of presenting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (articulating the standard for authentication of evidence on a motion for summary judgment).  If that burden has been met, the

James C. Mahan
U.S. District Judge

- 3 -

1   non-moving party must then come forward and establish the specific material facts in dispute to

2   survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588

3   (1986). The party opposing summary judgment must also provide authenticated evidence in support

4   of its opposition. *See Orr*, 285 F.3d at 773.

5          First Cause of Action – 42 U.S.C. § 1983

6          To prevail in their § 1983 cause of action, plaintiffs must establish that the conduct

7   complained of was (1) committed by a person acting under color of state law and (2) deprived the

8   plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States.

9   *Marshall v. Sawyer*, 301 F.2d 639, 646 (9th Cir. 1962). However, Ninth Circuit precedent

10  establishes that Ms. Washington's tortious conduct is not automatically imputed to CCSD for

11  purposes of § 1983 suits. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).

12         Instead, municipal liability attaches when: (1) an employee violated the plaintiffs'

13  constitutional rights pursuant to an official policy or informal practice of the municipal entity; (2)

14  the employee had final policy-making authority, and thus the act itself was official policy, or (3) a

15  person with final policy-making authority ratified the unconstitutional behavior.[1] *Lauren v. Nellis*,

16  2011 WL 5598313, *7 (D. Nev. 2011), *citing Gillete v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.

17  1992). A "policy" is defined by the Ninth Circuit as a deliberate choice to follow a course of action

18  made by the official responsible for establishing final policies regarding the subject matter at issue.

19  *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1189 (D. Nev. 2008), *citing*

20  *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002). A plaintiff may prove the existence of a

21  municipal policy or custom by showing the existence of (1) an officially adopted policy or decision

22  to deprive individuals of their federal rights or (2) an unofficial but widespread policy or custom that

23  results in deprivations, such as inaction that reflects "deliberate indifference" toward the deprivation

24  of rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Monell*, 436 U.S. 658.

25

26

27         [1] Both parties appear to agree that the second and third categories of *Monell* liability do not
    apply to the facts of this case. Plaintiffs do not contend that Ms. Washington had final policy-
28  making authority or that her conduct was ratified by policy-makers.

James C. Mahan
U.S. District Judge                                      - 4 -

1      Defendant CCSD submits that plaintiffs have no evidence of an official policy aimed at

2  depriving individuals of their federal rights.  Further, CCSD's motion argues that there is no

3  unofficial, but widespread, policy that results in such deprivations, such as inaction amounting to

4  "deliberate indifference."  Deliberate indifference "occurs when the need for more or different action

5  is so obvious and the inadequacy of the current procedure so likely to result in the violation of

6  constitutional rights, that the policy makers can reasonably be said to have been deliberately

7  indifferent to the need."  *City of Canton*, 489 U.S. at 388-89 (internal quotations omitted).  The

8  Ninth Circuit requires plaintiffs to show that the municipality was on actual or constructive notice

9  that its omission would likely result in a constitutional deprivation.  *Gibson v. County of Washoe*,

10  290 F.3d 1175, 1186 (9th Cir. 2002).

11      Plaintiffs submit that Nevada has a statutory prohibition on child abuse and those who

12  witness child abuse have a duty to report such actions within 24 hours of witnessing it.  The statute

13  states that "child abuse consists of any physical or mental injury to a child of a non-accidental

14  nature."  NRS § 432B.020.  In the case at hand, plaintiffs have submitted evidence that teaching

15  assistants Little, Burse, Anderson, and Byerly reported Ms. Washington's abusive actions to vice

16  principal Cheung and CCSD supervisors Kaehole and Grasso on multiple occasions.  Doc. #73, Exs.

17  D, E, H, and J.  Plaintiffs further submit that both principal Bennett and vice principal Cheung

18  witnessed first hand repeated abuse of the children while they were in the cafeteria, but still failed

19  to take action, demonstrating indifference.  Doc. #73, Ex. *D*.

20      Plaintiffs maintain that CCSD's inaction amounted to "deliberate indifference" of plaintiffs'

21  constitutional rights.  When the need for more or different action is so obvious to protect the

22  constitutional rights of potential victims, the "policymakers" can be said to have been deliberately

23  indifferent to the need. *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470 at 1477, 1478 (9th

24  Cir. 1992).  Further, whether the government entity has been deliberately indifferent is a question

25  of fact for the jury.  *Id*.  Similarly, plaintiffs are only required to show that the "identified deficiency

26  . . . [is] closely related to the ultimate injury."  *City of Canton*, 489 U.S. at 391.

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

1    In this case, plaintiffs have established a genuine issue of material fact regarding CCSD's

2    knowledge.  Authenticated evidence indicates that various teaching assistants complained of Ms.

3    Washington's behavior well before March of 2007.  Whether the delay amounts to deliberate

4    indifference is a question for the jury.  *Oviatt* 954 F.2d at 1477-78.  Had the district responded to and

5    thoroughly investigated these complaints, Ms. Washington would have been removed from the

6    classroom much earlier than she was.

7    Second and Third Causes of Action – The Americans with Disabilities Act and

8    Rehabilitation Act

9    Section 504 of the Rehabilitation Act forbids organizations that receive federal funding,

10   including public schools, from discriminating against people with disabilities.  29 U.S.C.

11   §794()(2)(B); *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1020 (9th Cir. 2002).  Section 504

12   provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her

13   or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

14   discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. §

15   794(a).

16   An organization that receives federal funds violates § 504 if it denies a qualified individual

17   with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful

18   access to the benefits of public services.  *See Alexander v. Choate*, 469 U.S. 287, 301-02 & n. 21

19   (1985); *Bird*, 303 F.3d at 1020, 1022.  Title II of the Americans with Disabilities Act extends these

20   protections to prohibit discrimination by all public entities, not just those receiving federal financial

21   assistance.  *See* 42 U.S.C. §§ 12132-12133.

22   To establish a claim for monetary damages under the ADA and Rehabilitation Act, plaintiffs

23   must prove intentional discrimination.  *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir.

24   1998) (ADA); *Duvall v. Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (Rehabilitation Act).  The level

25   of intent required to support an award of compensatory damages is measured by the "deliberate

26   indifference test."  *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).  "Deliberate

27   indifference requires both knowledge that a harm to a federally protected right is substantially likely,

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1   and a failure to act upon that likelihood." *See Holman v. Logisticare Solutions*, 2011 WL 855342,

2   *2, *quoting Duvall*, 260 F.3d at 1138.   Where a plaintiff cannot show deliberate indifference,

3   summary judgment is appropriate.   *Doe v. Nevada*, 2006 WL 2583746, ( D. Nev. 2006).

4          CCSD argues that in order to recover monetary damages under this Section of the ADA, the

5   plaintiff must prove intentional discrimination on the part of the defendant, which is measured by

6   the "deliberate indifference test."   CCSD maintains that upon receiving the first complaint, the

7   school administration took appropriate measures by immediately investigating.   After a second

8   complaint, an investigatory conference was immediately noticed and Ms. Washington was removed

9   from the classroom shortly thereafter.   CCSD argues that these actions clearly prove that there was

10  no "deliberate indifference" on their part since their response to the allegations was immediate.

11         Plaintiffs submitted evidence that, on a number of occasions, the teaching assistants informed

12  the vice principal that the children in Ms. Washington's class were being abused.  (Doc. #73, Exs.

13  D, E, H, and J.)  Plaintiffs' evidence disputes CCSD's representations that it had no notice of the

14  abuse until March 2007 and acted promptly upon receiving the complaints.  *Id*.  Plaintiffs contend

15  that CCSD was on notice of Ms. Washington's inappropriate behavior, and that it was substantially

16  likely that the children were being abused and, therefore, deprived of the educational program

17  offered by the district and to which they were entitled.

18         Based on the above mentioned facts, plaintiffs have submitted sufficient evidence to establish

19  an issue of material fact that should be submitted to a jury.   Therefore, the motion for summary

20  judgment on the second and third causes of action is denied.

21         <u>Sixth Cause of Action – Negligent Hiring, Training, and Supervision</u>

22         "The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable

23  background check on a potential employee to ensure that the employee is fit for the position."  *See*

24  *Lucey v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Ed.*, 2009 WL 971667, *7 (D. Nev.

25  2009), *quoting Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750 (Nev. 1991).  If an employer hires

26  an employee when it knew, or should have known, of the employee's dangerous propensities, the

27  employer violates this duty.  *Id*.

28

**James C. Mahan**
**U.S. District Judge**

1    CCSD argues that it is entitled to immunity on plaintiff's state law claims that CCSD was

2    negligent in its hiring, training, and supervision of Ms. Washington.  According to NRS 41.032(2),

3    CCSD and its employees are entitled to immunity for any discretionary acts that related to social,

4    economic, and/or public policy; because CCSD engaged in discretionary acts relating to the hiring,

5    training, and supervision of Ms. Washington, it is entitled to immunity.  CCSD contends that

6    plaintiffs are unable to prove the essential elements of their negligent hiring, training and supervision

7    claims because CCSD conducted a background check on Ms. Washington, checked her references,

8    required she take additional autism-specific training prior to beginning classroom instruction,

9    formally observed her classroom behavior on 14 different occasions, and conducted unannounced

10   weekly or bi-weekly classroom visits to conduct further observation.

11   Plaintiffs argue that CCSD is not entitled to discretionary immunity for their complete failure

12   to supervise and report child abuse, and that NRS 41.032(2) only applies if a decision (1) involves

13   an element of individual judgment or choice and (2) is based on considerations of social, economic,

14   or political policy.  *Martinez v. Maruszczak*, 168 P.3d 720 (Nev. 2007). Plaintiffs maintain that the

15   district's decision to fail to properly supervise a teacher by completely ignoring repeated reports of

16   child abuse by a teacher is not considered a "discretionary"act. Plaintiffs further argue that there is

17   no social, economic, or political policy that mandates immunity from legal or moral responsibility

18   for a school's failing to prevent or report child abuse by its employees when that school is entrusted

19   with the care of mentally disabled, minor-aged students.

20   Plaintiffs have established a genuine issue of material fact as to whether the district was

21   negligent in its supervision of Ms. Washington after repeated reports of child abuse.  As explained

22   above, there is a genuine issue of material fact regarding what CCSD knew and when it knew it.  If

23   CCSD ignored repeated complaints regarding Ms. Washington and allowed her to continue

24   controlling the classroom, then CCSD may have negligently supervised Ms. Washington. Summary

25   judgment is not appropriate.

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    Accordingly,

2        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Clark County

3  School District's motion for partial summary judgment (Doc. #73) be, and the same hereby is,

4  DENIED.

5        DATED June 5, 2012.

6

7    _____
     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**                                    - 9 -